**Sandra WYNN, et al., Plaintiffs,**

v.

**DIXIELAND FOOD STORES, INC., et al., Defendants.**

**Civ. A. No. 87–D–0760–S.**

United States District Court, M.D. Alabama, S.D.

Feb. 10, 1989.

Kent Spriggs, Jeanne M.L. Player, Spriggs & Warren, P.A., Tallahassee, Fla., Dennis N. Balske, Montgomery, Ala., for plaintiffs.

Chris Mitchell, Carol Sue Nelson, Constangy, Brooks & Smith, Birmingham, Ala., for defendants.

R. Lawrence Ashe, Jr., C. Geoffrey Weirich, Kelly J. Koelker, Paul, Hastings, Janofsky & Walke, Atlanta, Ga., for Dixieland Food Stores, Inc.

### MEMORANDUM OPINION

DUBINA, District Judge.

There is presently pending in this cause the plaintiffs' motion for class certification filed herein on January 21, 1988. The class that the plaintiffs seek to represent consists of all black persons seeking: employment with, advancement with, and/or resistance to termination by Dixieland Food Stores, Inc. On May 19 and 20, 1988, the court conducted an evidentiary hearing on the plaintiffs' motion for class certification.

The parties subsequently submitted post-hearing briefs in support of and in opposition to the plaintiffs' pending motion. For the reasons which follow, this court is of the opinion that the requirements of Rule 23(a) and (b)(2) are satisfied and that this cause should be certified as a class action.

## I. *Statement of the Case*

Originally, a single plaintiff, Sandra Wynn, filed the complaint in this cause under 42 U.S.C. § 1981, seeking to represent herself and "other black persons seeking to obtain and hold management positions with the defendant company." This court later permitted the plaintiff to amend her complaint to add, as parties plaintiffs, Minnie Fantroy and Annie Kyser. In their amended complaint, the plaintiffs seek to represent "black persons who have sought and/or held positions with defendant corporation." In their motion for class certification itself, the plaintiffs assert that they are seeking to represent "all black persons seeking employment with, advancement with and/or resistance to termination." After the United States Supreme Court indicated in *Patterson v. McLean Credit Union*, 485 U.S. 617, 108 S.Ct. 1419, 99 L.Ed.2d 879 (1988), that it would reconsider *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), which could, depending on the court's decision, preclude the plaintiffs herein from maintaining a viable claim under 42 U.S.C. § 1981, the plaintiffs filed a motion for leave to again amend their complaint, and add a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* That motion was granted by this court.

## II. *Facts*

Based on the evidence presented to the court at the evidentiary hearing on the plaintiffs' motion for class certification, the court makes the following factual findings:

The defendant Dixieland Food Stores, Inc. ("Dixieland"), is comprised of 48 Piggly Wiggly grocery stores in four states: Alabama, Georgia, Florida and Mississippi. The company has four organizational districts, each of which is headed by a district manager who is responsible for the nonperishable or grocery department in each store. The other respective departments within a store, *i.e.*, the meat, deli, and produce departments report to a district merchandiser who is responsible for these departments within a particular district. Each district manager is responsible for approximately ten to twelve stores and reports to the director of retail operations, Dan Lee. Each meat merchandiser reports to the meat merchandise manager, who reports to the director of meat operations. Each produce merchandiser reports to the director of produce, who in turn reports to the director of retail operations.

Each of the 48 stores varies in geographic location, size of employees, vacancies, turn over, and number and type of departments. The majority of stores have a grocery or nonperishable department, meat department, and produce department. Some stores have a deli/bakery department, while other larger stores have a frozen food and dairy department and flower department. Some of the stores have computerized scanners in the checkout lines to record prices pursuant to a universal price code. These stores employ a P.O.S. coordinator or clerk who is a non-management employee responsible for assuring that all prices in the store are properly maintained.

Dixieland seeks to maintain a ratio of part-time and full-time employees of approximately 65 percent part-time to 35 percent full-time. Part-time employees work less hours than full-time employees and are not entitled to the same benefits that full-time employees receive. For the most part, the only full-time jobs are supervisory or managerial jobs. Certain nonmanagement jobs such as head cashier, P.O.S. coordinator, head stock clerk, skilled meat cutters and some cashiers are also full-time.

Each store has a store manager who is responsible for store operations. Under his immediate supervision is an assistant manager and a second assistant manager. Each department within a store has a department manager such as a produce manager, a meat manager and a deli manager, each of whom has responsibility over their respective departments. Each store manager has full and independent authority to

hire part-time employees. In making part-time hiring decisions, the store manager may consult with the department manager, but the authority rests with the store manager. Store managers also have the sole authority over transfers, discipline, and discharge for part-time employees. While the store manager might consult with a department manager in the store, no approval is necessary from a district or corporate level to discharge a part-time employee. In filling a full-time position within a store, however, the store manager and the respective department manager must confer with either the district manager or the merchandiser over the department.

The court finds that both plaintiffs Sandra Wynn and Annie Pearl Kyser are appropriate representatives of class members who have suffered discrimination in the selection process by Dixieland. Mrs. Wynn was denied promotions to the full-time, upper-level positions of head cashier and POS/scanning coordinator in favor of whites. Mrs. Kyser was rejected for the position of full-time deli worker in favor of a white outside applicant. Further, class member Bessie C. Curtis was denied promotions in 1985 to head cashier and to POS scanning coordinator in Dixieland's Selma, Alabama, store. The head cashier position was given to a white outside applicant. Ms. Curtis' complaint of discriminatory denial of selection for head cashier was lodged with the EEOC, which found "reasonable cause" to believe that her claims of race discrimination were true. The POS scanning coordinator job denied to Ms. Curtis was given to a white individual who had bagged and stocked groceries at the store during his two-three month tenure with the company.

The court also finds that plaintiffs Sandra Wynn, Annie Pearl Kyser and Minnie Fantroy are adequate representatives on the issue of discriminatory termination. Their termination claims are typical of the class in that they were fired from their positions because of their race.

The most telling testimony at the hearing on the plaintiffs' motion for class certification came from Bruce Neal and Robert Purvis. Mr. Neal was first employed by Dixieland in 1981, and in 1986 he was promoted to store manager. He was terminated by Dixieland in June of 1987. Mr. Purvis first went to work with Dixieland in 1975 and ultimately became a district supervisor in charge of numerous stores. The court finds the testimony of each of these witnesses to be persuasive as to why this court should grant the plaintiffs' motion for class certification. Both Mr. Neal and Mr. Purvis testified as to the defendants' class-wide policy of limiting hiring opportunities for black persons. They testified that Dan Lee, a top management employee of Dixieland, made racially derogatory statements at various management meetings such as: (1) he would not hire another black until the government made him; (2) the store manager[s] should not hire blacks to handle money; and (3) the store manager[s] should not hire black cashiers because they steal. Mr. Neal also testified that Lee's evaluation of the cause of inventory losses at the Marianna, Florida, store was that blacks were causing the white employees to steal. Mr. Lee's statements, which constitute direct evidence of racial bias in the hiring and selection process used by Dixieland, are accepted by this court as true. Moreover, the court did not find the material testimony given by Butch Bryan to be credible. There were numerous discrepancies between Bryan's testimony presented at the evidentiary hearing and testimony he submitted in a sworn affidavit filed in support of the defendants' motion for partial summary judgment.

### III. *Discussion*

The question of class certification is a procedural one distinct from the merits of the action. *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842; *Huff v. N.D. Cass Co.,* 485 F.2d 710 (5th Cir.1973) (en banc). *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178–79, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Nevertheless, the court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." *General Telephone Co.*

of Southwest v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). To meet the requirements for a class under Fed.R.Civ.P. 23(a) and (b)(2), the plaintiffs must show numerosity of the class, typicality of the named plaintiffs' claim, commonality of questions of law or fact, and adequacy of representation.[1] The plaintiffs must also show that the final relief requested is appropriate to the class as a whole.

Further, certification of a class is within the sound discretion of the district court. Lewis v. Heckler, 752 F.2d 555, 557 (11th Cir.1985). The plaintiffs in the present case seek to represent a class of black persons who have sought and/or held positions with Dixieland. This includes persons with claims of discrimination in selections for jobs (both hiring and promotions) and in terminations.

### A. *Numerosity*

■ Practicality of joinder is the primary issue in assessing whether the numerosity requirement of Rule 23(a)(1) is satisfied. Factors to be considered include the class size, ease of identifying its members' names and addresses, the ease with which they could be served, and geographical dispersion. *Kilgo v. Bowman Transp. Inc.,* 789 F.2d 859, 878 (11th Cir.1986). Certification of multi-facility and multi-state classes, such as in the instant action, is appropriate. *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986); *Griffin v. Carlin,* 755 F.2d 1516 (11th Cir.1985). The court finds numerosity is present in this case. Dixieland operates approximately 48 retail grocery stores in four states and has employed between 370 and 519 black persons each year in the period 1984 through 1987. Those numbers do not include, however, an unknown number of qualified applicants who were not hired.

### B. *Commonality and Typicality*

The commonality and typicality requirements of Rule 23(a)(2) and (3) tend to merge. *General Telephone Co. v. Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2371 n. 13. The purpose of these requirements is to insure that "maintenance of a class action is economical" under the circumstances and that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected...." *Id.*

This court finds that the evidence presented at the class certification hearing demonstrates that the plaintiffs have satisfied the commonality and typicality requirements. They have "specifically identif[ied] the questions of law or fact that are common to [their] claims and to those of members of the class." *Coon v. Georgia Pacific Corp.,* 829 F.2d 1563, 1566 (11th Cir.1987). The plaintiffs have not only alleged commonality of their membership in a protected class, but they have identified specific injuries that they have suffered, namely discriminatory rejection with respect to selection for specific jobs, and discriminatory termination. Through evidence presented at the evidentiary hearing, the plaintiffs demonstrated that those same injuries have been suffered by the class and that the defendants maintain a pervasive policy of discrimination. The evidence demonstrated that the defendants virtually excluded black persons from upper level jobs throughout the company for

---

1. Federal Rule Civil Procedure 23(a) and (b)(2) provides:

   (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

   (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

   \* \* \* \* \* \*

   (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

the period 1984–1987. During this time there were no black store managers, one black POS/scanning coordinator,[2] and no black deli managers. In addition, the percentage of blacks holding the positions of both head cashier/coordinator of customer service and cashier declined between 1984 and 1987.

With regard to terminations, substantial evidence was presented that black employees routinely were terminated because of their race. The testimony of the class representatives combined with testimony offered by the defendants' witnesses for the purpose of articulating any legitimate business related explanation for the terminations suggests, in the opinion of this court, evidence of a corporate-wide pattern of discrimination in terminations. Both Dan Lee and Butch Bryan confirmed that individual store managers do not have the authority to terminate full-time employees. This indicates to the court that the pattern clearly is corporate-wide rather than isolated as to individual stores.

The evidence presented at the hearing provides the required nexus between the plaintiffs and the class. They have demonstrated to this court that maintenance of a class action is economical because the plaintiffs' individual claims are so intertwined with the claims of the class that the latter's interest will be adequately protected. *See Griffin v. Carlin,* 755 F.2d at 1532.

### C. *Adequacy of Representation*

The requirement of adequacy of representation tends to merge with commonality and typicality. *Nelson v. United States Steel Corp.,* 709 F.2d 675, 679 n. 8 (11th Cir.1983). The plaintiffs have demonstrated that their claims are sufficiently intertwined with the class members' claims that they will adequately protect the interests of the absent class members. The plaintiffs have no conflict with the interests of the class, and each plaintiff testified that she will vigorously pursue this action because she does not want other black per-

sons to endure the discrimination she has suffered by the defendants.

The plaintiffs' attorneys are qualified, experienced and able to conduct the litigation. The court personally knows Dennis N. Balske to be an experienced trial lawyer who has capably represented plaintiffs in class action litigation in the past. Further, Kent Spriggs has litigated civil rights and employment discrimination class actions for over twenty years, and Jeanne M.L. Player has represented employment discrimination claimants for six years and has participated in class action litigation.

Once the prerequisites of Rule 23(a) are satisfied, the plaintiffs must then show that one category of Rule 23(b) is met. Rule 23(b)(2) requires that the challenge of the class to the defendants' conduct must be based on grounds applicable to the entire class. *Davis v. Weir,* 497 F.2d 139, 146 (5th Cir.1974). Subsection (b)(2) is particularly applicable to employment discrimination class actions. *Giles v. Ireland,* 742 F.2d 1366, 1372 (11th Cir.1984).

This court is of the opinion that the overwhelming evidence presented at the hearing on class certification demonstrates that the defendants have acted in a racially-discriminatory manner that applies to the entire class.

While the overwhelming evidence presented to the court at the evidentiary hearing supports this court's certification of a class that includes black persons with promotion and termination claims, the question of whether a class should also be certified on the plaintiffs' hiring claim is somewhat more difficult. The defendants in their post-hearing brief argue vehemently that the plaintiffs offered little if any evidence on the defendants' hiring practices and that the court should not certify a class on this claim due to the fact that each of the representative plaintiffs were hired by the defendant and, therefore, could not represent a class of persons who were not hired. More specifically, the defendants

---

**2.** The plaintiff Sandra Wynn served in this position for about six weeks in 1987 until she was terminated.

argue that the plaintiffs lack standing to represent a class of black persons complaining of discrimination and initial hiring or as to promotions that they personally were not denied. *Griffin v. Dugger,* 823 F.2d 1476 (11th Cir.1987). This court has reviewed the *Griffin* case and is of the opinion that it does not support the defendants' contention that the plaintiffs herein lack standing to represent a class of black persons complaining of discrimination in initial hiring or promotions. *Griffin* holds that each claim asserted must be tied to *one* of the plaintiffs and not as the defendants contend that *each* plaintiff must have been injured by every decision. It is not required that each plaintiff have suffered every injury asserted by the class.

The court has also carefully read the Supreme Court's opinion in the *Falcon* case with specific reference to footnote 15. This court is of the opinion that the plaintiffs herein properly can represent applicants even though the plaintiffs were all hired, because the defendants used one *entirely subjective selection system* for all selection decisions. The evidence demonstrates that employees from within and outsiders compete for the same jobs. There are no separate hiring and promotion policies. All selection decisions are made by an exclusively white management staff. This is true whether the selection is made by the store manager to fill a part-time position or whether the selection is for a full-time position requiring upper management approval. The evidence presented to the court at the hearing on class certification demonstrates that the selection process is the same regardless of the type or level of job filled or the status of the person selected whether part-time/full-time, management/non-management, outsider or incumbent. The instant case is different from the factual setting in *Griffin v. Dugger* in that this case does not involve an objective hiring system and a subjective promotion system. The defendants hire outsiders and promote incumbents using the same selection system that is entirely subjective. The defendants operate "under a general policy of discrimination" that is "manifested in the same general fashion."

*General Telephone Co. of the Southwest v. Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15. Accordingly, this court agrees with the plaintiffs that they can adequately represent a class of applicants and incumbents under the authority of *Falcon* footnote 15. Further, the Eleventh Circuit in *Griffin v. Dugger* held that the district court should give "real meaning" to footnote 15 of *Falcon* and "should not hesitate" to certify a class of applicants and employees if the requirements of Rule 23(a) are satisfied. 823 F.2d at 1487. In the opinion of this court, the plaintiffs herein have made this showing which thus makes it proper for the court to certify a class of applicants and employees.

In conclusion and for the above reasons, it is the opinion of this court that a class of black persons who have sought and/or held positions with the defendant company for the years 1984–87, including persons with claims of discrimination in selections for jobs (both hiring and promotions) and in terminations, is due to be certified.

A separate order will accompany this memorandum opinion.

## ORDER

In accordance with the Memorandum Opinion filed contemporaneously herewith, it is the

ORDER, JUDGMENT and DECREE of the court that the plaintiffs' motion for class certification be and it is hereby GRANTED. It is further

ORDERED that a class of black persons who have sought and/or held positions with the defendant company for the years 1984–87, including persons with claims of discrimination in selections for jobs (both hiring and promotions) and in terminations, be and it is hereby CERTIFIED.