Thomas A. EVANS, Plaintiff-Appellant,

v.

U.S. PIPE & FOUNDRY COMPANY,
etc., Defendant-Appellee.

No. 81–7125.

United States Court of Appeals,
Eleventh Circuit.

Jan. 24, 1983.

Robert L. Wiggins, Jr., Birmingham, Ala., for Evans, et al.

Bradley, Arant, Rose & White, James P. Alexander, Stephen E. Brown, Robert K. Spotswood, Birmingham, Ala., for defendant-appellee.

Before HILL and HENDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

GARZA, Senior Circuit Judge:

On January 13, 1971, Thomas Evans filed a charge of racial discrimination with the Equal Employment Opportunity Commission (EEOC) naming U.S. Pipe & Foundry and the Molders Union as respondents. Evans alleged that the company failed "to permanently promote me"; that he was discriminated against with respect to unspecified terms and conditions of employment; that he was harassed on the job; and that the union failed to adequately represent him. His charge arose after U.S. Pipe disqualified him from the position of charging crane relief operator, a job he attained by bid, on the 29th day of a thirty-day qualification period.[1] On February 27, 1973, the EEOC issued a determination finding "reasonable cause" to believe that Evans had been disqualified for racially discriminatory reasons. When conciliation failed, the EEOC issued Evans a right to sue letter, and this suit was instituted as a class action on January 14, 1977.[2]

In the first pretrial conference in December, 1977, the court stated that a class certification hearing would be held to consider the claims of plaintiff Evans and any potential intervening plaintiff.[3] On July 18, 1978, a class certification hearing was held where Evans presented as evidence his own deposition, answers to interrogatories from U.S. Pipe, and the undisputed facts set

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. The normal promotion process at U.S. Pipe involved two steps. First, when a position was available, a notice was posted, and employees wishing promotion to such position could "bid" on the job. After a qualification review, a bid would be accepted, and the employee would for thirty days be temporarily promoted to the job. If the company was dissatisfied with the employee's work at the new position, he could be disqualified from the job within the thirty-day period. Otherwise, his promotion would be considered permanent. In this case, Evans received the bid but was disqualified from the job on the 29th day of the thirty-day trial period.

2. The complaint, filed as a putative class action, alleged employment discrimination with respect to hiring, initial job assignments, promotions, transfers between departments and facilities, discipline, terminations and other unspecified terms and conditions of employment. The allegations of the complaint were denied by both defendants.

3. In plaintiff's motion for class certification, Evans sought to represent a class of "all black employees of the defendant company and all black members of the defendant union from January 13, 1969, to the present time who may have been discriminated against in initial job assignments, promotions, reductions-in-force, discipline and terminations." The motion also requested certification of a subclass of present employees and a subclass of employees discriminated against in discipline and terminations. Following the pretrial conference in December, 1977, six employees sought to intervene as party plaintiffs and class representatives. The court delayed ruling on their motion to intervene until November 21, 1978.

forth in the briefs. Based on this evidence, the district court denied class certification on November 21, 1978, finding: (1) the putative class would include members whose claims were outside the scope of the EEOC charge and could not, therefore, be represented by Evans; (2) a smaller class which Evans could properly represent had not been shown to meet the "numerosity" requirement of Rule 23; and (3) Evans, since no longer employed by U.S. Pipe due to a disability, could not adequately represent injunctive claims of other class members.[4]

At a second pretrial conference on January 16, 1979, Evans informally requested the district court to reconsider its denial of class certification. No action, however, was taken at that time by the court. Finally, on March 3, 1980, a third pretrial conference was held in which the court agreed to "hear any additional evidence plaintiff may wish to present concerning the issue of class certification" at the trial on the merits of Evans' claim.[5]

On October 9, 1980, before the trial on the merits, the district court entered a memorandum opinion granting summary judgment with respect to three intervenors: Matthew Brock, Frank Clark and Major Epting. The court denied Evans' request to reconsider its class certification decision stating that Evans had had the full opportunity to present evidence at the July 18, 1978, certification hearing, and, therefore,

was not entitled to relitigate that question. With respect to intervenor Eddie Ezell who was also seeking class certification, the court reiterated that it would hear any additional evidence on that issue at trial.

On January 5, 1981, after a trial on the merits, the district court found Evans' individual discrimination claim meritorious. The court found against intervenor Ezell on his individual discrimination claim and his request for class representation. Plaintiff Evans now appeals the district court's denial of his class certification claim. We must determine whether the district court erred in denying certification of a class with plaintiff-appellant as the class representative.

### The "Like or Related" Rule

Appellant first asserts that the district court erred in its application of the "like or related" rule to the case at bar. There has been much dispute over exactly what the district court held in regard to this issue. Our reading of the court's Memorandum Opinion of November 21, 1978, reveals that the district court ruled as follows. The court found that the putative class as defined by the appellant—that is, a class of "all black employees of the defendant company . . . from January 13, 1969, to the present time who may have been discriminated against in initial job assignments,

---

**4.** In this memorandum opinion, the court dismissed one intervenor, Robert Thompkins, on a motion for summary judgment, but permitted five others to intervene (Eddie Ezell, Matthew Brock, Frank Clark, Major Epting, and A.T. White). Eventually, White requested to be dropped from the suit.

**5.** In the time between the court's original ruling on class certification (in November, 1978) and its decision to hear further evidence, the Fifth Circuit issued its decision in *Hodge v. McLean Trucking Company,* 607 F.2d 1118 (5th Cir. 1979), which the district court believed required further consideration of its earlier ruling. As the court later explained in a memorandum opinion:

In the interim, the Fifth Circuit had issued its decision in *Hodge v. McLean Trucking* . . . which can be read as overruling *sub silentio* a principle adopted in *Wheeler v. American Home Products,* 563 F.2d 1233 (5th Cir.1977),

and *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496 (5th Cir.1968). Believing that the apparent conflict of the decisions concerning the ability of an intervening plaintiff who had not filed charges with the EEOC to present Title VII claims, and indeed to be a class representative concerning Title VII claims, might well depend upon the merits of the Title VII claims by those plaintiffs who had satisfied the jurisdictional prerequisites, the court in its order following the conference [agreed to hear at trial further evidence on the class certification issue].

In this case, the district court believed that *Hodge* might have some effect on its denial of class certification with respect to the intervening plaintiffs who sought to represent a class. It is not clear whether the court intended its decision to hear additional evidence to apply to Evans.

promotions, reductions-in-force, discipline and terminations"—included members whose claims were beyond the scope of (and therefore, not like or related to) the EEOC charge filed by Evans and investigated by the Commission. The court perceived Evans' EEOC charge to encompass racial discrimination in the areas of promotions, job harassment, and union representation. We first consider the propriety of this ruling.

In *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir.1970), this court set forth what has been termed the "like or related" rule or "reasonable expectation" test which defines the scope or degree to which the discrimination alleged in a Title VII plaintiff's complaint can vary from that charged in the EEOC complaint and that investigated by the Commission. In *Sanchez,* we held "that the allegations in a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.' " *Id.* at 466, *quoting King v. Georgia Power Co.,* 295 F.Supp. 943, 947 (N.D.Ga. 1968). The court further stated that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.*

In this case, appellant contends that he sought to represent a class of employees who were discriminated against by the employment practices of the defendant involving subjective opinions, evaluation and decisionmaking by the upper level white supervisory staff. The class requested by the appellant identified those areas where subjective opinions by supervisors operated to discriminate against the defendant's employees. Those areas included "initial job assignments, promotions, reductions-in-force, discipline and terminations." Hiring, for example, was not included since plaintiff believed that appellee's procedures did not involve subjective decisionmaking in that area. Appellant contends that the EEOC investigation into Evans' charge was one which essentially encompassed or should have encompassed an investigation into these subjective practices which allegedly pervade defendant's discriminatory acts. Accordingly, it is asserted that these discriminatory acts rooted in the subjective decisionmaking of the white supervisory staff are "like or related" to those same practices which should have "grown out" of Evans' EEOC charge alleging discrimination in promotions, harassment, union representation and other terms and conditions of employment.

There is some support for appellant's argument in this and other court's application of the "like or related" rule. The pervasiveness of discriminatory practices has supported a finding that discrimination in terminations and hirings may be "like or related." *See EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453 (5th Cir.1975). In *Falcon v. General Telephone Company of Southwest,* 626 F.2d 369, 376–77 (5th Cir.1980), *vacated and remanded,* 450 U.S. 1036, 101 S.Ct. 1752, 68 L.Ed.2d 234 (1981), *reinstated in part,* 647 F.2d 633 (5th Cir.1981), *reversed on other grounds,* —— U.S. ——, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), this Circuit found hiring and promotion practices to be "like or related" where the EEOC investigation had encompassed both.[6] In *Falcon,*

---

**6.** The precedential value of *Falcon* is significantly diminished in light of the Supreme Court's second opinion. While the Court did not discuss the aspect of the Fifth Circuit opinion dealing with the jurisdictional claim, the case nevertheless limits the application of "across-the-board" suits based on general allegations of pervasive discriminatory policies. In *Falcon,* the Supreme Court addressed the propriety of maintaining an "across-the-board" class under the prerequisites of Federal Rule of Civil Procedure 23. The Court cautioned that certification of an "across-the-board" class would be overbroad if the plaintiff who sought to be class representative was not part of the class and possessed of the same interest and suffering from the same injury as the class members. The Court refused to allow a complaint alleging discrimination in promotion to form the basis for certifying a class "composed of Mexican-American persons who are employed or might be employed [by the Telephone Company] who have been and who continue to be or might be adversely affected by the practices complained of herein." It held that Rule 23(a) requirements of numerosity, commonali-

this Court recognized that other courts had interpreted the "like or related" rule to permit virtually any claim of discrimination in any area of employment to be considered an "outgrowth" of the charge of discrimination filed with the EEOC. 626 F.2d at 377. *See, e.g., McBride v. Delta Air Lines, Inc.,* 551 F.2d 113, 115 (6th Cir.), *vacated on other grounds,* 434 U.S. 916, 98 S.Ct. 387, 54 L.Ed.2d 273 (1977); *Tipler v. E.I. DuPont DeNemours and Co.,* 443 F.2d 125 (6th Cir. 1971); *Arey v. Providence Hospital,* 55 F.R.D. 62, 67 (D.D.C.1972). The "like or related" rule, on the other hand, has also been interpreted conservatively where the EEOC charge and investigation were more limited. *See, e.g., Ray v. Freeman,* 626 F.2d 439 (5th Cir.1980), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 198 (1981); *Bussey v. Hamilton Kent Manufacturing Co.,* 23 FEP 745 (N.D.Ga.1980); *EEOC v. Griffin Wheel Co.,* 12 FEP 523 (N.D.Ala.1976).

The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation. The record reveals that the substantive inquiry by the Commission was limited to defendant's claims of discrimination in promotion and harassment. Appellant's concept of widespread discrimination rooted in the subjective decisionmaking of the white supervisory staff was not a part of investigation by the Commission. Among the principles underlying the "like or related" rule is the belief that the Commission should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts. In light of these principles, we cannot say that the district court erred in finding that plaintiff's broad class included members whose claims were beyond the scope of Evans' EEOC charge.

*Application of Rule 23*

It is apparent, however, that at least with respect to defendant's promotion practices, appellant's complaint in the trial court presented a claim "like or related" to that charged and investigated by the Commission. We turn, therefore, to the second aspect of the district court's ruling. In its memorandum opinion, the court below found that even if a smaller class were considered, appellant had failed to meet the prerequisites of Federal Rule of Civil Procedure 23 authorizing class certification. The basis of the court's ruling was that appellant had failed to establish that any smaller class would have satisfied the numerosity requirements of Rule 23. We consider the court's ruling in light of the principles of law concerning Rule 23 numerosity, as well as in light of the principles set forth by the Supreme Court in the intervening case of *Falcon.*

At the 1978 hearing, plaintiff attempted to establish the necessary requirements for class certification by proffering certain statistical evidence, defendant's answers and exhibits to plaintiff's interrogatories, the collective bargaining agreements and the deposition testimony of Thomas Evans. The parties also agreed that it would be proper for the court to consider the uncontroverted facts set forth in the class briefs. Defendant presented no evidence rebutting plaintiff's other than its brief in opposition to plaintiff's motion.

The evidence before the court at the 1978 hearing revealed that of the substantial number of employees of U.S. Pipe, blacks occupied a disproportionate number of lower level, lower paying positions. The evidence further revealed that the average salary of black employees was less than

ty, typicality, and adequacy of representation effectively limit the class claims to those fairly encompassed by the named plaintiffs' claims. The Court further required that a plaintiff proffer more specific or "significant proof" to establish the prerequisites for class certification as well as his ability to be a proper class representative.

After *Falcon,* the end result is that even under a liberal interpretation of the "like or related" rule, the opportunity for a plaintiff to establish a class of individuals alleging "across-the-board" discrimination is significantly limited by the requirements of Rule 23.

that of white employees in identical positions. There was evidence that a disproportionately small number of black employees were successful in obtaining promotion to the supervisory staff, which positions were ordinarily filled by the hourly work force.

The collective bargaining agreements presented to the court supported Evans' claims that he and members of the promotion class were the victims of subjective evaluation of the type upon which this court has previously frowned. *See Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir.1972). The agreements and defendant's interrogatory answers identified skill, knowledge, ability and efficiency as factors controlling the promotion decision. There was no evidence, however, identifying objective criteria for judging such skills, knowledge or abilities. Furthermore, job descriptions and duties were generally vague and uninformative. Uncontroverted assertions of the proposed class representative, Evans, further substantiated his claims that he and the promotion class were similarly the victims of discrimination resulting from U.S. Pipe's subjective evaluation process. This evidence was sufficient to meet the requirements of Rule 23(a) with respect to commonality and typicality as defined in the Supreme Court's *Falcon* decision.

With respect to numerosity, the evidence was sufficient to at least conditionally certify the smaller class of employees who had been discriminated against through defendant's promotion practices.[7] *See generally, General Telephone Company of Southwest v. Falcon, supra,* 102 S.Ct. at 2372. (Conditional certification offers the "flexibility" which "enhances the usefulness of the class action device" so as to ensure the trial court that "actual, not presumed, conformity with Rule 23(a)" exists). Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. *Barlow v. Marion County Hospital District,* 88 F.R.D. 619, 625 (M.D.Fla.1980); *Tolbert v. Western Electric*

*Company,* 56 F.R.D. 108, 113 (N.D.Ga.1972). Furthermore, the relevance of the numerosity requirement to class certification may in appropriate cases be less significant where in fact class wide discrimination has been alleged, *Gurmankin v. Costanzo,* 626 F.2d 1132, 1134–35 (3d Cir.1980). Finally, at least one court has recognized that where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1). *See Foster v. Bechtel Power Corp.,* 89 F.R.D. 624 (E.D.Ark.1981); *Accord, Tolbert v. Western Electric Company, supra* ("[T]he wise practice is to allow such cases to proceed, at least at the onset, as class actions.").

In this case, there was some confusion as to whether or not the district court would permit Evans to come forth with further evidence in support of class certification following the July hearing. On March 3, 1980, the district court issued an order agreeing to "hear any additional evidence *plaintiff* may wish to present concerning the issue of class certification." The record is unclear as to whether this order was intended to apply to Evans. Two months prior to trial, however, the court issued an order denying Evans' motion to reconsider the question of class certification. As a result, this issue was not presented or tried at the merits trial. In light of the principles we have set forth and the confusion in the record, we believe Evans is entitled to the opportunity to bring forth more specific evidence on the question of numerosity to permit the trial court to determine whether this requirement has been met. A sufficient showing would permit the court to certify a class of employees discriminated against through defendant's promotion practices. On the facts of this case, it would be inequitable to deny Mr. Evans and the potential class members this opportunity. It is within the district court's discretion, however, to undertake and shape the promotion class, assuming numerosity

---

**7.** At the merits trial, plaintiff in fact introduced more specific evidence as to the actual number of potential class members who may have been discriminated against in promotion.

exists, as it deems proper. Such a class would at least include those workers like Evans who were disqualified after their bids were initially accepted, as well as those who bid and were rejected in the first stage of this promotion practice. Accordingly, the judgment of the district court is vacated, and we remand this action for further consideration consistent with this opinion.[8]

VACATED and REMANDED.

**8.** In its order denying class certification, the district court also stated: "In addition, Evans might be an inadequate representative of some potential classes, such as one seeking injunctive relief, because he is no longer an employee of U.S. Pipe nor eligible for employment due to a permanent disability." Since our opinion to-day instructs the court to consider a different class from that considered in its original opinion, we believe it is appropriate for the court to consider Mr. Evans' representative status as it specifically applies to the promotion class. Accordingly, we leave this question for the court's consideration on remand.